E-FILED
Wednesday, 03 February, 2016  02:44:28 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| MARSHALL KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   15-cv-3350 |
| | ) | |
| JEFF KORTE, Warden, | ) | |
| | ) | |
| Defendant. | ) | |

## MERIT REVIEW AND CASE MANAGEMENT ORDER

Plaintiff Marshall King, proceeding *pro se*, is currently incarcerated in the Western Illinois Correctional Center ("Western") and was granted leave to proceed *in forma pauperis*. The case is now before the Court for a merit review of Plaintiff's claims. The Court must "screen" Plaintiff's Complaint to "identify cognizable claims" or dismiss it or any portion of it that is "frivolous, malicious, [ ] fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

In reviewing the Complaint, the Court accepts the factual allegations as true, and liberally construes them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Plaintiffs must provide enough facts to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (internal citations and quotations omitted).

**FACTUAL BACKGROUND**

Plaintiff alleges that as a result of Western's policies he has not had adequate access to a telephone. In Western, there are four phones in each twenty-six inmate housing wing. Those phones are available for inmate use for a single ninety-minute window every day, and each inmate is limited to a half an hour of phone time.  This policy has created a black market for phone access. Inevitably, the inmates who live in cells closest to the phones reach the phones first and then "dictate [the phones'] usage." (Doc. 1 at 6). Meanwhile, inmates like Plaintiff with cells that are further from the phones "are never able to get the phones on their own." (*Id.*). To access one, these inmates must pay inmates with closer cells. (*Id.* at 6-7).

Plaintiff alleges that this policy has harmed him as it prevented him from using the phone to speak with his lawyer about a pending case. (*Id.* at 7). Specifically, Plaintiff had previously filed a claim alleging violations of his Fourth and Eighth Amendment rights. (*Id.*). On appeal, the Seventh Circuit held that he had stated an Eighth Amendment claim but had failed to state a Fourth Amendment Claim. (*Id.*). After the Seventh Circuit declined to hear the case *en banc*, Plaintiff's court appointed counsel wrote to him and informed him that he should call her within seven days to discuss whether he wished to petition the Supreme Court for a writ of certiorari. (*Id.*). Plaintiff attempted to place a call to his attorney, but could not, as the inmates controlling the phones told him that the phones were "overbooked with guys needing to make calls." (*Id.*). He never reached his attorney, and the case was remanded to the district court. (*Id.*).

Finally, Plaintiff alleges that he has complained about the policy to Defendant Jeff Korte, who is Western's warden. (*Id.*). Korte "determined that there is no issue here," and therefore never made any sort of "reasonable investigation." (*Id.*). Plaintiff seeks money damages and also seeks to enjoin the phone policy. (*Id.* at 9).

## DISCUSSION

Plaintiff has named Warden Korte as the only Defendant, and argues that Western's policy has violated his First Amendment right to telephone access. (*Id.* at 6). "To be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005). Whether Plaintiff's claim has merit, therefore, turns on two determinations: first, whether Defendant Korte "caused or participated in" the conduct that Plaintiff challenges; and second, whether Plaintiff has pleaded a constitutional deprivation.

Construing the Complaint liberally, as it must, the Court concludes that Plaintiff's allegations adequately allege Korte's personal involvement in the challenged conduct. To be liable under § 1983, "supervisory officials . . . must have had some personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct." *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 614-15 (7th Cir. 2002). A plaintiff may allege personal involvement by pleading that officials "personally were responsible for creating the policies, practices and customs that caused the constitutional deprivations." *Id.* at 615. Here, Plaintiff alleges that Western's telephone policy deprived him of

3

reasonable access to the phone. (Doc. 1 at 6-7). He does not allege that Defendant was responsible for creating the policy. *See Doyle*, 305 F.3d at 615. However, such an inference from Plaintiff's Complaint is plausible. Plaintiff has pleaded that other prisons in Illinois have addressed problems associated with telephone usage by either "allot[ing] more [telephone] time," "decid[ing] to log each inmate's phone usage," or "let[ting] the inmates out four at a time." (Doc. 1 at 6). Where there is variation in policies among Illinois prisons, but consistency within Western, it is plausible to attribute the institution-specific policy to Defendant.

At this very early stage, the Court also concludes that Plaintiff has adequately pleaded a constitutional deprivation by alleging that Western's policy has limited his access to telephones. Other circuits, including the Ninth Circuit and the Sixth Circuit, have expressly stated that inmates have a limited First Amendment right to telephone access. *See, e.g., Johnson v. State of Cal.*, 207 F.3d 650, 656 (9th Cir. 2000) ("Although prisoners have a First Amendment right to telephone access, this right is subject to reasonable limitations arising from the legitimate penological and administrative interests of the prison system."); *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (explaining that inmates enjoy a right to telephone access that is "subject to rational limitations in the face of legitimate security interests of the penal institution."). The Seventh Circuit has expressed doubt that prisoners have a First Amendment right to use a telephone to communicate with friends and family. *See Arsberry v. Illinois*, 244 F.3d 558, 564-65 (7th Cir. 2001) (stating that it would be "doctrinaire in the extreme" to suppose that denying inmates access to telephones violates the First Amendment). Yet it has also

entertained the possibility that prisons can violate the First Amendment by restricting phone access. *See Tucker v. Randall*, 948 F.2d 388, 391 (7th Cir. 1991) ("[U]nreasonable restrictions on prisoner's telephone access may also violate the First and Fourteenth Amendments."); *Israel v. Cohn*, 6 F. App'x 348, 350 (7th Cir. 2001) (dismissing First Amendment phone access claim pursuant to 28 U.S.C. § 1915A after concluding that the rationale behind an institution's telephone policy was "self-evident."); *Boriboune v. Litscher*, 91 F. App'x 498, 500 (7th Cir. 2003). Plaintiff's claim is strengthened by the fact that Western's policy kept him from speaking with his attorney, as that implicates his right of access to the court. *See Martin v. Davies*, 917 F.2d 336, 338 (7th Cir. 1990) (explaining that prison officials' affirmative duty to provide inmates with reasonable access to courts includes a responsibility to provide access to counsel); *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004) (identifying the two-part test courts use to assess access to court claims); *Holmes v. Godinez*, 311 F.R.D. 177, 233 (N.D. Ill. 2015) (citing *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996)) (implying that a plaintiff can prove a First Amendment access to telephones claim by showing he was denied access when he had a specific need to speak with his lawyer).

To the extent that that such a right exists, Plaintiff will face an uphill battle. The Court "must accord substantial deference to the professional judgment of prison administrators" when reviewing policies such as Western's phone policy. *See Singer v. Raemisch*, 593 F.3d 529, 534 (7th Cir. 2010) (quoting *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)). Courts routinely find that prisons' telephone usage policies are reasonable. *See Hoffman v. Fed. Bureau of Prisons*, No. 13-cv-852, 2013 WL

5529612, at *3 (S.D. Ill. Oct. 7, 2013) (listing cases). In order for the Court to assess the policy's reasonableness, though, "prison officials must. . . articulate their legitimate governmental interest in the regulation and provide some evidence supporting their concern." *Riker v. Lemmon*, 798 F.3d 546, 553 (7th Cir. 2015) (internal quotation marks and citations omitted); *see also Israel*, 6 F. App'x at 350 (explaining that prisons must ordinarily "proffer some reason" for a policy when the justification is not self-evident).

At this stage, the Court must also consider whether Plaintiff seeks "monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(2). Plaintiff has not specified whether he is suing Defendant in his official or individual capacity. The Eleventh Amendment bars claims for damages against state officials in their official capacities. *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). Although it is ordinarily assumed that plaintiffs sue state officials in their official capacity unless otherwise specified, "a court may view such claims to be alleged against the defendants in their individual capacities if the allegations and pleadings indicate that the parties consider the claims to be individual capacity claims." *Alvarado v. Battaglia*, 539 F. Supp. 2d 1022, 1026 (N.D. Ill. 2008). The Court construes Plaintiff's claim for money damages to be a claim against Defendant in his individual capacity. *See id.* To the extent that Plaintiff seeks damages against Defendant in his individual capacity, such a claim is dismissed. *Id.* The Court considers Plaintiff's claim for injunctive relief to be a claim against Defendant in his official capacity. *See Gonzalez v. Feinerman*, 663 F3d 311, 315 (7th Cir. 2011) (explaining that warden is the proper defendant when a plaintiff seeks injunctive

relief because wardens are responsible for ensuring that injunctive relief is carried out); *Owens v. Duncan*, No. 15-CV-01169-MJR, 2015 WL 7075402, at *2 (S.D. Ill. Nov. 13, 2015) (allowing claim to proceed against warden in both official and individual capacity where the plaintiff only named him in his official capacity but requested both damages and an injunction).

One loose end must be cleared up. Plaintiff states that he is seeking punitive damages "for Warden Korte's refusal to reasonably investigate" his allegations. (Doc. 1 at 9). He also includes allegations relating to Defendant's failure to properly respond to his grievances. To the extent that Plaintiff has attempted to assert an independent claim that Defendant violated his constitutional rights by rejecting his grievance, such a claim must be dismissed. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Perales v. Bowlin*, 644 F. Supp. 2d 1090, 1100 (N.D. Ind. 2009) ("Denying a grievance or even failure to investigate a prisoner's complaints does not make an official liable for damages under section 1983.").

IT IS THEREFORE ORDERED that:

> 1) Pursuant to its merit review of the complaint under 28 U.S.C. § 1915A, the court finds the Plaintiff alleges that Defendant Jeff Korte violated his First Amendment right by denying him, and continuing to deny him, adequate access to a telephone. The claim is stated against the Defendant in his individual and official capacities. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

> 2) This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendant before filing any motions, in order to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendant's counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

3) The Court will attempt service on Defendants by mailing Defendant a waiver of service. Defendant has 60 days from service to file an Answer. If Defendant has not filed an Answer or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendant has been served, the Court will enter an order setting discovery and dispositive motion deadlines.

4) Defendants shall file an answer within 60 days of the date the waiver is sent by the Clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendant's positions. The Court does not rule on the merits of those positions unless and until a motion is filed by Defendant. Therefore, no response to the answer is necessary or will be considered.

5) Once counsel has appeared for a Defendant, Plaintiff need not send copies of his filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send a notice of electronic filing to defense counsel. The notice of electronic filing shall constitute service on Defendants pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

6) Counsel for Defendant is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendant shall arrange the time for the deposition.

7) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO:**

1) **Deny Plaintiff's Motion for Appointment of Counsel (Doc. 3), as plaintiff has failed to show that he made a reasonable attempt to acquire counsel without the Court's intervention. *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff may refile his request after making, and documenting, proper efforts to obtain counsel on his own; 2) Attempt service on Defendants pursuant to the standard procedures; and 3) set an internal court deadline 60 days from the entry of this order for the court to check on the status of service and enter scheduling deadlines.**

Lastly, it is ordered that if Defendant fails to sign and return a waiver of service to the Clerk within 30 days after the Waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshal's Service on Defendant and will require that Defendant pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

Entered this 3rd day of February, 2016.

_____s/Joe B. McDade_____
JOE BILLY McDADE
United States Senior District Judge
